## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

| | |
|---|---|
| Howard R. L. Cook and Tommy Shaw Foundation | ) |
| For Black Employees of the Library of Congress | ) |
| Inc., *et al.,* | ) |
| | ) |
| PLAINTIFFS APPELLANTS | ) |
| | )          No.12-5193 |
| | ) |
| v. | ) |
| | ) |
| James H. Billington, Librarian of Congress, | ) |
| | ) |
| Defendant. | ) |

_____ )

On Appeal from the United States District Court, District of Columbia, No. 10-cv-1315
The Hon. Barbara J. Rothstein, U.S.D.J.

## BRIEF ON APPEAL F0R PLAINTIFFS-APPELLANTS

David L. Rose
Joshua N. Rose
Rose Legal Advocates, P.C.
1726 M Street, NW, Suite 203
Washington, D.C.  20036
(202) 331-8555

Attorneys for
Plaintiff/Appellants

January 7, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS …………………………….  ii

TABLE OF AUTHORITIES …………………………..  iii

JURISDICTIONAL STATEMENT ……………………..  1

ISSUES FOR REVIEW  ………………………………...  2

STATUTES AND REGULATIONS ……………………  3

STATEMENT OF THE CASE  …………………………  15

STATEMENT OF FACTS  ……………………………  16

RULING BELOW  ……………………………………  19

SUMMARY OF THE ARGUMENT ……………………  21

STANDARD OF REVIEW ……………………………..  24

ARGUMENT ………………………………………  24

    I.  The Denial of the Privileges of Recognition is
       Facially Retaliatory …………………………  …  24

    II. Participation in EEO Advocacy Groups is a
       Protected Activity …………………………  25

    A.  The Zone of Interest Test Applies to Title VII
       Claims ………………………………………  25

    B.  Employee Group Advocacy is Within the
       Zone of Interest Protected by Section 717

i

of Title VII. ……………………………………    29

C.  Plaintiffs have Suffered Injury Within
     the Zone of Interest ……………………………    32

III. Title VII Protects All Participation in EEO
      Proceedings  …………………………………    34

RELIEF SOUGHT  ……………………………………..    37

## <u>TABLE OF AUTHORITIES</u>

**Statutes and Regulations**                                **Pages**

*42 U.S.C. 2000e-16         …………………………………………….
         Passim
- Reproduced pp. 3-5

 29     C.F.R. § 1614.101
     …………………………………………………………..     31
  -    Reproduced p. 6

 29 C.F.R. § 1614.102
     …………………………………………………………..     31
     Reproduced p. 7

 29 C.F.R. § 1614.605
     …………………………………………………………..     31
  -    Reproduced p. 11

LOCR  2022-2
……………………………………………………………………….. 18
  -     Reproduced p. 12

| Cases | Pages |
|-------|-------|

*Burlington Northern & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006)………………………………………………………………….
19, 29, 35

*Gomez-Perez v. Potter*, 553 U.S. 474 (2008) …………………. 35, 36

*Ethnic Employees of Library of Congress v. Boorstin*,
751 F.2d 1405 (1985)……………………………………      31, 35,36

*National Ass'n. of Homebuilders v. U.S. Army Corps of
Engineers*, 417 F.3d 1272 (D.C. Cir. 2005) …………………… 27

*Thompson v. North American Stainless, LP*,      22, 26,27
131 S.Ct. 863 (2011)

*Principal Authorities for Plaintiffs-Appellant

## Rule 26.1 Statement

No parent corporation or publicly owned entity owns any part of the plaintiff Cook Foundation.

## Rule 32(a)(7)(B) Statement

Joshua Rose, undersigned counsel, has ascertained through the use of word processing software that this Brief contains approximately 4,549 words if the Statutory section is excluded and 8,258 words including the reproduced statutes and regulations.

## Jurisdictional Statement

The District Court had jurisdiction of this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-16 and under 28 U.S.C. 1331 and 1367.

This Court has jurisdiction on appeal under 28 U.S.C. 1291.

This Appeal is from a final order dismissing the Complaint for failure to state a claim and denying the motion for leave to file the Amended Complaint. The Court granted the motion to dismiss under Rule 12(b)(6) by Judgment entered on August 9, 2011. Plaintiffs filed a timely Motion to Alter or Amend or for Leave to File a New Complaint. That Motion was

denied by order of May 31, 2012.  The Notice of Appeal was filed on June 14, 2012.

## Issues for Review

1)    Whether an employee group injured by a decision of a federal government employer, to deny it the privileges of official recognition can assert a claim for retaliation under 42 U.S.C. 2000e-16(c) where the purpose and effect of the denial of recognition is to deter employees from joining the group and supporting affirmative action advocacy, Title VII complaints and other protected activity through the group?

2)    Whether employees who are members of a group that is denied the privileges of official recognition by a federal agency suffer an injury actionable under 42 U.S.C. 2000e-16(c) when such denial deters other employees from joining and supporting the group, but does not deter the employee members from pursuing their own claims?

## Statutes and Regulations

## <u>Title VII</u>

## 42 U.S.C. § 2000e-16.  Employment by Federal Government

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage. All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, United States Code, in executive agencies as defined in section 105 of title 5, United States Code (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission [Postal Regulatory Commission], in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the General Accounting Office [Government Accountability Office], and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

(b) Equal Employment Opportunity Commission; enforcement powers; issuance of rules, regulations, etc.; annual review and approval of national and regional equal employment opportunity plans; review and evaluation of equal employment opportunity programs and publication of progress reports; consultations with interested parties; compliance with rules, regulations, etc.; contents of national and regional equal employment opportunity plans; authority of Librarian of Congress. Except as otherwise provided in this subsection, the Civil Service Commission shall have authority to enforce the provisions of subsection (a) through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Civil

Service Commission shall--

   (1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment;

   (2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each such department, agency, or unit; and

   (3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to--

   (1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

   (2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

With respect to employment in the Library of Congress, authorities granted in this subsection to the Civil Service Commission shall be exercised by the Librarian of Congress.

(c) Civil action by employee or applicant for employment for redress of

4

grievances; time for bringing of action; head of department, agency, or unit as defendant. Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection 717(a) [subsec. (a) of this section], or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 [42 USCS § 2000e note] or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 706 [42 USCS § 2000e-5], in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) Section 2000e-5(f) through (k) of this title applicable to civil actions. The provisions of section 706(f) through (k) [42 USCS §§ 2000e-5(f)-(k)], as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.[.]

(e) Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity. Nothing contained in this Act [title] shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 [42 USCS § 2000e note] relating to equal employment opportunity in the Federal Government.

(f) Application of Lilly Ledbetter Fair Pay Act. Section 706(e)(3) [42 USCS § 2000e-5(e)(3)] shall apply to complaints of discrimination in compensation under this section.

**42 U.S.C. 2000e-3** Other unlawful employment practices

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e-2000e-17].

. . .

**EEOC Regulations**

29 C.F.R. 1614.101 - General policy.

   (a) It is the policy of the Government of the United States to provide equal opportunity in employment for all persons, to prohibit discrimination in employment because of race, color, religion, sex, national origin, age, disability, or genetic information and to promote the full realization of equal employment opportunity through a continuing affirmative program in each agency.

(b) No person shall be subject to retaliation for opposing any practice made unlawful by title VII of the Civil Rights Act (title VII) (42 U.S.C. 2000e et seq.), the Age Discrimination in Employment Act (ADEA)(29 U.S.C. 621 et seq.), the Equal Pay Act (29 U.S.C. 206(d)), the Rehabilitation Act (29 U.S.C. 791 et seq.), or the Genetic Information Nondiscrimination Act (GINA) (42 U.S.C. 2000ff et seq.) or for participating in any stage of administrative or judicial proceedings under those statutes.

**29 C.F.R. 1614.102 Agency program.**

   (a) Each agency shall maintain a continuing affirmative program to promote equal opportunity and to identify and eliminate discriminatory practices and policies. In support of this program, the agency shall:

(1) Provide sufficient resources to its equal employment opportunity program to ensure efficient and successful operation;

(2) Provide for the prompt, fair and impartial processing of complaints in accordance with this part and the instructions contained in the Commission's Management Directives;

(3) Conduct a continuing campaign to eradicate every form of prejudice or discrimination from the agency's personnel policies, practices and working conditions;

(4) Communicate the agency's equal employment opportunity policy and program and its employment needs to all sources of job candidates without regard to race, color, religion, sex, national origin, age, disability, or genetic information, and solicit their recruitment assistance on a continuing basis;

(5) Review, evaluate and control managerial and supervisory performance in such a manner as to insure a continuing affirmative application and vigorous enforcement of the policy of equal opportunity, and provide orientation, training and advice to managers and supervisors to assure their understanding and implementation of the equal employment opportunity policy and program;

(6) Take appropriate disciplinary action against employees who engage in discriminatory practices;

(7) Make reasonable accommodation to the religious needs of applicants and employees when those accommodations can be made without undue

hardship on the business of the agency;

(8) Make reasonable accommodation to the known physical or mental limitations of qualified applicants and employees with handicaps unless the accommodation would impose an undue hardship on the operation of the agency's program;

(9) Provide recognition to employees, supervisors, managers and units demonstrating superior accomplishment in equal employment opportunity;

(10) Establish a system for periodically evaluating the effectiveness of the agency's overall equal employment opportunity effort;

(11) Provide the maximum feasible opportunity to employees to enhance their skills through on-the-job training, work-study programs and other training measures so that they may perform at their highest potential and advance in accordance with their abilities;

(12) Inform its employees and recognized labor organizations of the affirmative equal employment opportunity policy and program and enlist their cooperation; and

(13) Participate at the community level with other employers, with schools and universities and with other public and private groups in cooperative action to improve employment opportunities and community conditions that affect employability.

(b) In order to implement its program, each agency shall:

(1) Develop the plans, procedures and regulations necessary to carry out its program;

(2) Establish or make available an alternative dispute resolution program. Such program must be available for both the pre-complaint process and the formal complaint process.

(3) Appraise its personnel operations at regular intervals to assure their conformity with its program, this part 1614 and the instructions contained in the Commission's management directives;

(4) Designate a Director of Equal Employment Opportunity (EEO Director), EEO Officer(s), and such Special Emphasis Program Managers (e.g., People With Disabilities Program, Federal Women's Program and Hispanic Employment Program), clerical and administrative support as may be necessary to carry out the functions described in this part in all organizational units of the agency and at all agency installations. The EEO Director shall be under the immediate supervision of the agency head;

(5) Make written materials available to all employees and applicants informing them of the variety of equal employment opportunity programs and administrative and judicial remedial procedures available to them and prominently post such written materials in all personnel and EEO offices and throughout the workplace;

(6) Ensure that full cooperation is provided by all agency employees to EEO Counselors and agency EEO personnel in the processing and resolution of pre-complaint matters and complaints within an agency and that full cooperation is provided to the Commission in the course of appeals, including granting the Commission routine access to personnel records of the agency when required in connection with an investigation; and

(7) Publicize to all employees and post at all times the names, business telephone numbers and business addresses of the EEO Counselors (unless the counseling function is centralized, in which case only the telephone number and address need be publicized and posted), a notice of the time limits and necessity of contacting a Counselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers.

(c) Under each agency program, the EEO Director shall be responsible for:

(1) Advising the head of the agency with respect to the preparation of national and regional equal employment opportunity plans, procedures, regulations, reports and other matters pertaining to the policy in § 1614.101 and the agency program;

(2) Evaluating from time to time the sufficiency of the total agency program for equal employment opportunity and reporting to the head of the agency with recommendations as to any improvement or correction needed, including remedial or disciplinary action with respect to managerial, supervisory or other employees who have failed in their responsibilities;

(3) When authorized by the head of the agency, making changes in programs and procedures designed to eliminate discriminatory practices and to improve the agency's program for equal employment opportunity;

(4) Providing for counseling of aggrieved individuals and for the receipt and processing of individual and class complaints of discrimination; and

(5) Assuring that individual complaints are fairly and thoroughly investigated and that final action is taken in a timely manner in accordance with this part.

(d) Directives, instructions, forms and other Commission materials referenced in this part may be obtained in accordance with the provisions of 29 CFR 1610.7 of this chapter.

(e) Agency programs shall comply with this Part and the Management Directives and Bulletins that the Commission issues. The Commission will review agency programs from time to time to ascertain whether they are in compliance. If an agency program is found not to be in compliance, efforts shall be undertaken to obtain compliance. If those efforts are not successful, the Chair may issue a notice to the head of any federal agency whose programs are not in compliance and publicly identify each non-compliant agency.

(f) Unless prohibited by law or executive order, the Commission, in its

10

discretion and for good cause shown, may grant agencies prospective
variances from the complaint processing procedures prescribed in this Part.
Variances will permit agencies to conduct pilot projects of proposed
changes to the complaint processing requirements of this Part that may
later be made permanent through regulatory change. Agencies requesting
variances must identify the specific section(s) of this Part from which they
wish to deviate and exactly what they propose to do instead, explain the
expected benefit and expected effect on the process of the proposed pilot
project, indicate the proposed duration of the pilot project, and discuss the
method by which they intend to evaluate the success of the pilot project.
Variances will not be granted for individual cases and will usually not be
granted for more than 24 months. The Director of the Office of Federal
Operations for good cause shown may grant requests for extensions of
variances for up to an additional 12 months. Pilot projects must require that
participants knowingly and voluntarily opt-in to the pilot project. Requests
for variances should be addressed to the Director, Office of Federal
Operations.

## 29 C.F.R. § 1614.605 Representation and official time.

   (a) At any stage in the processing of a complaint, including the
counseling stage § 1614.105, the complainant shall have the right to be
accompanied, represented, and advised by a representative of
complainant's choice.

(b) If the complainant is an employee of the agency, he or she shall have a
reasonable amount of official time, if otherwise on duty, to prepare the
complaint and to respond to agency and EEOC requests for information. If
the complainant is an employee of the agency and he designates another
employee of the agency as his or her representative, the representative shall
have a reasonable amount of official time, if otherwise on duty, to prepare
the complaint and respond to agency and EEOC requests for information.
The agency is not obligated to change work schedules, incur overtime
wages, or pay travel expenses to facilitate the choice of a specific
representative or to allow the complainant and representative to confer.
The complainant and representative, if employed by the agency and

11

otherwise in a pay status, shall be on official time, regardless of their tour of duty, when their presence is authorized or required by the agency or the Commission during the investigation, informal adjustment, or hearing on the complaint.

# LIBRARY OF CONGRESS REGULATION

## LCR 2022-2

**SUBJECT: Recognized Employee Organizations Concerned with Welfare, Financial Assistance, Recreational, Cultural, or Professional Activities**

SERIES: 2022
Staff Activities
STATUTORY AUTHORITY:
2 U.S.C. §136
RESPONSIBLE OFFICE:
Human Resources Services
ISSUE DATE:
July 28, 2009
REVIEW DATE:
July 28, 2014
SUPERSEDES:
October 24, 1975, issuance of
LCR 2022-2

**Contents:**
Section 1. Purpose and Authority
Section 2. Responsibility for Administration
Section 3. General Policy Section 4. Recognition of Employee Organizations Section 5. Privileges and Services Accorded Recognized Employee Organizations

**Section 1. Purpose and Authority**
This Regulation states the policies and procedures concerning the Library's relationships with recognized employee organizations as defined herein.

**Section 2. Responsibility for Administration**
Human Resources Services shall have overall responsibility for the administration of this Regulation and is delegated authority to grant, deny, or withdraw official recognition of organizations under the conditions set forth below. The Office Worklife Services shall serve as the principal liaison between the organizations recognized under this Regulation and the Library administration.

**Section 3. General Policy**
A. It is the continuing policy of the Library to recognize, in conformance with the principles,

12

Case 1:10-cv-01315-BJR Document 11-4 Filed 12/21/10 Page 1 of 3

practices, and procedures outlined below, the existence of certain employee organizations formed within the Library and to recognize the right of employees freely to join or to refrain from joining such organizations without fear of coercion, restraint, interference, or reprisal.

B. Employee organizations recognized under this Regulation shall be those concerned only with welfare, financial assistance, recreational, cultural, or professional activities.

C. Employee participation during duty hours, and the use of Library facilities by recognized organizations, are privileges granted by and subject to the provisions of this Regulation.

D. An employee may participate in the management of a recognized organization and be designated to act on behalf of that organization so long as there is no conflict of interest or incompatibility with the duties of his/her position. (See also LCR 2023-2, Section 6.)

**Section 4. Recognition of Employee Organizations**

A. When applying for recognition under this Regulation, an organization shall provide evidence that it meets the following criteria:

1. It does not advocate the overthrow, by force, of the constitutional form of Government of the United States;

2. It is organized and open to all staff members on a Library-wide basis, but is not a labor organization;

3. It does not discriminate with regard to membership;

4. It is organized to conduct its affairs in an orderly manner and in accordance with democratic principles and practices;

5. It provides proof of membership of not less than 50 employees of the Library of Congress; and

6. It submits a copy of its constitution, by-laws and a list of its officers.

B. In order to be recognized the organization shall submit a memorandum of application to Worklife Services, attaching thereto the above required evidence and information. The completed application shall be reviewed by Worklife Services and forwarded to the Director for Human Resources Services (HRS) with recommendations. The Director, HRS shall grant or deny official recognition, in writing, to the organization concerned.

C. The Director, HRS, after receiving the recommendation of Worklife Services, may withdraw recognition of any organization when:

1. It fails to meet or to conform with the requirements of this Regulation, or

2. Its activities infringe upon the exclusive functions and rights of labor organizations; or

3. Its activities are unlawful, disrupt Library operations, violate the rights of Library staff members, or result in violations of the Library's Regulations, whether such activities are conducted by an organization's officers, authorized agents, or members acting under their direction.

4. A decision by the Director, HRS to deny or withdraw recognition shall be delivered, in writing, setting forth the reasons therefor, and stating that it may be appealed to the Librarian. Any such appeal by the organization shall be filed in writing with the Librarian within twenty (20) work days of the date of receipt. The Librarian's decision with respect to any such request for appeal shall be final.

5. Recognized organizations shall certify and provide evidence to Worklife Services

13

no later than April 1 of each year, or at such other times as they may require, provided no less than ten (10) work days notice is given the organizations, that they continue to conform to the criteria set out in A. above, including a current list of the officers and any changes in constitutions or by-laws.

**Section 5. Privileges and Services Accorded Recognized Employee Organizations**
Case 1:10-cv-01315-BJR Document 11-4 Filed 12/21/10 Page 2 of 3
A. Annual Membership Meetings. Organizations are permitted to hold an annual membership meeting, not to exceed one hour on official time, using Library space, when available. Staff members may attend such meetings without charge to leave if their supervisors determine they may be spared from their duties.
B. Other Meetings and Activities. Other meetings and activities may be held on the Library's premises on non-duty time.
C. Scheduling of Meetings, Programs, and Other Activities.
Requests for approval and scheduling of meetings, programs, and other activities shall be made by any organization two weeks in advance, in writing, to Worklife Services. Such requests shall be made in accordance with LCR 1818-3, Use of Library Space for Meetings and Special Events, including the completion of Form 22, Request for Reservation of Meeting Place.
Worklife Services shall approve or disapprove requests made under this Section and notify the organization accordingly.
D. Posted Announcements. Materials from recognized organizations shall be posted in accordance with LCR 1820, Informational Signs.
E. Reproduction and Distribution of Materials. Materials may be reproduced and distributed by the Library in connection with functions that are officially scheduled by the Office of Worklife Services and co-sponsored by the Library, related to the functions of the Library, or in support of those functions. Other printed materials related to the activities or services of the organization or such items as travel announcements, insurance plans, and advertisements approved by the Office of Worklife Services may be distributed by the Library or by keyworkers subject to workload demands and supervisory approval.
F. Information to New Employees. If a recognized organization provides information descriptive of its activities for new employees, Worklife Services will distribute it during the regularly scheduled orientation program

14

### Statement of the Case

Plaintiffs initially filed this action seeking relief for two violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-1 et. seq. First, plaintiffs alleged that defendant retaliated against them by refusing to recognize plaintiff the Howard R.L. Cook and Tommy Show Foundation for Black Employees (the "Cook Foundation") in violation of 42 U.S.C. 2000e-16(a) and 16(b)(3). Second, plaintiffs sought to compel the issuance of annual affirmative action reports which had not been filed since 2004 despite the requirement of annual reports specified in 42 U.S.C. 2000e-16. DKT 3, Complaint. The Cook Foundation has long supported a putative class action known as *Mills et. al. v Billington*, Civil Action 04-cv-2205 (D.D.C.). The individual plaintiffs are also named plaintiffs in the *Mills* case and the affirmative action reports were sought, in part, to support the allegations of racial barriers to promotion that are at the heart of both the *Mills* case and the affirmative action requirements of 42 U.S.C. 2000e-16.

Defendant issued an Affirmative Action Report in 2011, rendering Count II moot for present relief. Plaintiffs also conceded a failure to exhaust

15

administrative remedies with regard to that claim.

Judge Kennedy issued a Judgment dated August 9, 2011, dismissing the complaint for failure to state a claim for relief.  DKT 18,19.  Plaintiffs filed a timely Motion to Alter or Amend which included a motion for leave to file a proposed First Amended Complaint. DKT 20-3.

Judge Rothstein denied the Motion for reasons stated in her Opinion of May 31, 2012. DKT 25.

Plaintiffs filed a timely Notice of Appeal on June 14, 2012.  DKT 26.


## STATEMENT OF FACTS

Plaintiffs are three current and one retired employee of defendant Library of Congress ("LOC") and the Howard R.L. Cook and Tommy Shaw Foundation for Black Employees (the "Cook Foundation").  DKT 3, 20-3. The individual plaintiffs were officers of the Cook Foundation when the Complaint was filed.  DKT 3.  They are also named plaintiffs in a related case known as *Mills et. al. v Billington*, Civil Action 04-cv-2205 (D.D.C.).

The Cook Foundation was established in 2001 to assist African American employees in achieving their professional goals through, *inter*

16

*alia*, the mechanisms of the Consent Decree then in place as a result of the litigation known as *Cook v Boorstin*, Civil Action 82-0400 (D.DC) and described in *Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997). The Consent Decree expired in 2003 and a new action was instituted in 2004 which alleges that the Library has reverted to a pattern of race discrimination in promotions. *Mills et. al. v Billington*, Civil Action 04-cv-2205 (D.D.C.).

The purposes of the Cook Foundation include deterring the effects of racially discriminatory employment practices against African American employees of the Library of Congress, providing educational programs and aiding African-American employees pursuing claims of discrimination. DKT 20-3, ¶4. An employee or former employee may become a member by contributing to the Foundation. DKT 25, Opinion of May 31, 2012 page 2. The Foundation "aims to 'end and deter the effects of racially discriminatory employment practices against African-American employees of the Library of Congress.'" Id.

The Library of Congress Regulation governing the recognition of employee organizations provides for the recognition of organizations with at least fifty members that are concerned with "welfare, financial assistance

17

. . . or professional activities." LCR 2022-2, §3.B. DKT 11-4. The

Regulation bars organizations that advocate the overthrow of the U.S.

Government by force, that impinge on the role of recognized labor

organizations or that discriminate on the basis of race. *Id.*, §4.A. Defendant

did not reject the application (application for what?) of the Cook

Foundation based upon any failure to meet the criteria stated in the

Regulation.

The stated policy of the LOC is to "recognize …the existence of certain

organizations …and to recognize the right of employees freely to…join such

organizations." Library Regulation LCR 2022-2. Some of the organizations

recognized by the Library are composed primarily of employees identified by

their national origin or race such as the Asian, Hispanic and Black and one is

based upon sexual orientation. DKT 20-3, para. 21

Defendant accords specified "Privileges" and services to recognized

organizations. DKT 11-4, §5. These include the right to use LOC facilities for

meetings and activities, the right to hold annual meetings that employees can

attend on official time without taking leave, the right to post, reproduce and

distribute materials, and the right to have materials about the organization

18

distributed to new employees as part of the orientation process.

Many employees have been deterred from joining the Cook Foundation because the LOC has refused to recognize it.  DKT 20-3, ¶¶12,13, 23, 25.

The Cook Foundation has repeatedly sought recognition from the LOC and Defendant has repeatedly denied recognition.  DKT 20-3 ¶14.

The Plaintiff-Appellant Cook Foundation sought recognition by letter signed by the individual plaitniffs and dated June 6, 2008.  DKT 20-3 ¶15

Defendant-Appellee Library of Congress denied that request by letter of June 10, 2008, stating that "it would not be appropriate for the Library to …officially recognize an organization that has as its main goals assisting individuals in filing and maintaining claims, suits and litigation against the Library." DKT 20-3 ¶16, 17.

Plaintiffs timely sought counseling and exhausted their administrative remedies. DKT 20-3 ¶19,20.

## RULING BELOW

The Opinion of August 9, 2011, DKT 18, first holds that plaintiffs allege a sufficient "injury in fact" to confer Article III standing.[1]  It then proceeds to

---

[1] The Opinion relies on the preclusive effect of an earlier ruling *Cook v. Billington*, 541 F. Supp.

articulate the correct standard for a materially adverse action under the private sector provisions of Title VII:

> A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

DKT 18, p. 7.

The Opinion below rules, however, that deterring the Cook Foundation from attracting members and supporting complaints of discrimination for third parties[2] is not enough to state an actionable deterrent effect. Rather, the retaliatory denial of privileges must rise to a level where the restrictions on the Foundation would actually deter Foundation members from filing their own EEO complaints

Finally, at p. 11, the Opinion holds that activities of third parties can never be protected by Title VII. It reasons that 42 U.S.C. 2000e-3 protects only "employees" so that the Foundation can never be a victim of retaliation

---

2d 358, 362 (D.D.C. 2008).

[2] . The Opinion misreads plaintiffs' third party argument as if plaintiffs were advocating a subjective standard. As the Court notes, the individual leaders of the Foundation have not been deterred and are named in the present law suit. Rather, the Foundation asserts that the restrictions chill the ability and inclination of the Foundation to assist third parties in supporting EEO claims – an activity clearly

actionable under the statute.

The Opinion of May 30, 2012 is based on the same conclusion that the deterrent effect on the Foundation and its ability to support employee complaints is irrelevant to the Title VII analysis because the Foundation is neither an "employee" nor an "applicant for employment."  DKT 25, p. 7-8. The Court squarely rejects the additional argument that injury is established because the denial of the privileges of recognition deters non-member employees from becoming members.  Pp. 9-10.

## SUMMARY OF THE ARGUMENT

Defendant has refused to recognize the Cook Foundation as an employee organization and has refused to grant it the privileges of recognition because the Cook Foundation engages in activity protected by the anti-retaliation provisions of Title VII.

The reason for refusing the privileges of recognition is facially retaliatory. The denial is specifically targeted at chilling the protected activity of the Cook Foundation and its officers by denying it the privileges of recognition BECAUSE it assists other employees with EEO charges and

_____

protected under *Burlington*.

21

lawsuits. That denial has the effect of deterring employees from becoming members and otherwise participating in the protected activities of the Foundation. Those activities support the EEO claims of the named individual plaintiffs and other employees of defendant.

The opinions below both hold that the Cook Foundation cannot bring a Title VII claim in its own name because it is not an "employee or applicant for employment," within the meaning of the second sentence of 2000e-3(a).

The decision below is contrary to the holding of the Supreme Court in *Thompson v North American Stainless, LP,* 131 S.Ct. 863, 870 (2011), that third parties can state a retaliation claim if they fall within the "zone of interest" that Congress sought to protect when it enacted Title VII. The decision of the District Court should be reversed. The Cook Foundation can suffer injury of a kind that is actionable under Title VII.

The ruling is also inconsistent with precedent in this Circuit which allowed a Title VII claim by Library of Congress employees when defendant revoked the official recognition of a predecessor organization to the Cook Foundation. *See*, *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1417-1418 (D.C. Cir. 1985).

22

The court below further erred in dismissing the claims of the individual Cook Foundation officers. It held that the privileges an employee/officer of the Foundation enjoys as a result of recognition are not substantial enough for any reasonable employee to be deterred from engaging in protected activity. The opinions suggest that filing an EEO charge and participating in a lawsuit are the only kinds of activities protected under the statute and that any measures taken to deter "support" activities of the kind the Foundation provides through its officers can never rise to the level of protected activity.

While private employees may or may not be limited to challenging retaliatory acts that would deter the specific activities enumerated in 42 U.S.C. 2000e-3, the rights of federal employees are broader. Section 717 of the Act prohibits all kinds of discrimination, including retaliation aimed at making it more difficult for employees to support EEO activities and to attract members to an organization formed for that purpose. Individual employees suffer an injury actionable under Title VII when the agency takes retaliatory action to weaken an employee organization because it supports their pending claims in court.

## STANDARD OF REVIEW

This appeal is from a dismissal for failure to state a claim under rule 12(b). Review is *de novo*. All facts alleged in the Complaint and the Amended Complaint are to be taken as true and all favorable inferences are to be made in favor of finding a claim that can be alleged.

## ARGUMENT

### I. The Denial of the Privileges of Recognition is Facially Retaliatory

Defendant has refused to recognize the Cook Foundation as an employee organization and has refused to grant it the privileges of recognition because the Cook Foundation engages in activity protected by the anti-retaliation provisions of Title VII.

> . . . it would not be appropriate for the Library to …officially recognize an organization that has as its main goals of assisting individuals in filing and maintaining claims, suits and litigation against the Library.

DKT 20-3 ¶16, 17.

The reason for refusing the privileges of recognition is facially

24

retaliatory. The language used by the Defendant Appellee Library of Congress is specifically targeted at chilling the protected activity of the Cook Foundation and its officers by denying it the privileges of recognition BECAUSE it assists other employees with EEO charges and lawsuits. That denial has the effect of deterring employees from becoming members and otherwise participating. The Amended Complaint so states.

## II. Participation in EEO Advocacy Groups is a Protected Activity

The Court below erred in holding that participation in advocacy groups like the Cook Foundation that support EEO activity is not an activity protected by Title VII. Practices designed to deter participation in and support of such groups are actionable retaliation even if reasonable employees are not deterred from pursuing their own claims. Participation of employee groups in the affirmative action process designed to evaluate and address collective claims for systemic practices is a specific mandate of Section 717 of Title VII, 42 U.S.C. 2000e-16(b)(3).

### A.    The Zone of Interest Test Applies to Title VII Claims

The Court below held that the Cook Foundation could not have a claim because it is neither an employee or an applicant for employment and

25

is, therefore, outside the scope of persons specifically enumerated in 42

U.S.C. 2000e-16(c).  In fact, section 717 expressly encourages employee

interest groups for Title VII advocacy and requires agencies to consult with

them in formulating annual affirmative action plans.  42 U.S.C. 2000e-

16(b)(3).  Such advocacy is clearly within the zone of interest the statute is

intended to protect.  Defendant's decision to withhold privileges from the

Foundation because of such advocacy is actionable retaliation.

    In *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (U.S. 2011), the

Supreme Court held that an individual who did not engage in protected

activity could, nonetheless, sue for retaliation when he was fired shortly

after his fiancée filed a charge of discrimination.  The Court first held that

punishing a person closely associated with a participant in protected

activity can have the deterrent "chilling" effect required to give the

participant employee a substantive claim.  The more difficult question, and

the one relevant to the present case, is why a person who never

participated in protected activity is, nonetheless, a person "aggrieved"

within the meaning of the section creating a private right of action. 42

U.S.C. 2000e-5(f).  The Court held squarely that the statute goes beyond

protecting the individual participant in protected activity and extends to

cover third parties within the "zone of interest" of the statute:

> We hold that the term "aggrieved" in Title VII
> incorporates this test, enabling suit by any plaintiff with an
> interest "arguably [sought] to be protected by the statutes."

*Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (U.S. 2011).

The "zone of interest" test imported into Title VII by the *Thompson*

opinion is narrower than under Article III of the Constitution, but it still

allows a court to consider a far broader class of injuries than a narrow

reading of the statute would permit.  Any party with an interest consistent

with the statutory purposes may have a claim:

> The zone-of-interest test, however, is intended to "exclude only
> those whose interests are so marginally related to or
> inconsistent with the purposes implicit in the statute that it
> cannot reasonably be assumed that Congress intended to
> permit the suit." Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399, 93
> L. Ed. 2d 757, 107 S. Ct. 750 (1987).

*Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs*, 417 F.3d

1272, 1287 (D.C. Cir. 2005).

The Cook Foundation does not assert EEO claims in its own right.

Rather, it is being punished because it supports the claims of its members

and other LOC employees.  Just as a person who never participated in the

27

EEO process can still be within the zone of interest protected by the anti-retaliation rule of 42 U.S.C. 2000e-3, so too, an organization that does not have its own claim on the merits is within the zone of interest protected by 42 U.S.C. 2000e-16. Actions intended to chill the advocacy efforts of such groups are actionable retaliation.

Section 717 of Title VII was added in 1972 to bring federal agency employees within the purview of the Act. Like the private sector cause of action, a federal employee has the right to bring a civil action if he is "aggrieved." 42 U.S.C. 2000e-16(c). Under the logic of *Thompson*, therefore, a third party who is punished because of participation in the EEO complaints of an employee should be afforded the protection of Title VII if his activity is within the zone of interest sought to be protected by Title VII.

The Cook Foundation is an employee group that is being punished because one of its purposes is to assist defendant's employees, including the plaintiff officers of the Foundation, with protected EEO activity, such as the prosecution of the *Mills* case. Its EEO activity is within the zone of interest sought to be protected when Congress added Section 717 to Title VII. This Court should extend Title VII retaliation coverage to employee

groups that support the EEO claims of employees and applicants for employment.

### B. Employee Group Advocacy is Within the Zone of Interest Protected by Section 717 of Title VII.

The zone of interest of the anti-retaliation provisions of Title VII for private employers includes protection against practices that might not rise to the level of an "adverse action" actionable under the anti-discrimination provisions of Title VII, but have a chilling effect because they might deter a reasonable person from engaging in protected activity (such as supporting the claims of others) within the context of the particular situation. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

The anti-discrimination mandate for federal agencies is broader because it prohibits all discrimination and requires annual, proactive affirmative action measures – including consultation with employee advocacy groups.

When Congress adopted Section 717, eight years after passage of the Civil Rights Act of 1964, it declared a policy that not only outlaws discriminatory employment actions, but mandates affirmative action by federal employers like defendant to ensure that federal agencies proactively

avoid unlawful discrimination.  Among the specific mandates of the Act is a requirement that the head of each…agency "consult with and solicit the recommendations of interested individuals, groups and organizations relating to equal employment opportunity." Sec. 717(a)(3), 42 U.S.C. 2000e-16(a)(3). Consultation with groups interested in equal employment opportunity is an affirmative mandate for federal employers.[3]

The court below erred in holding that the privileges of recognition of the Cook Foundation are not substantial enough for any reasonable employee to be deterred from engaging in protected activity.  The opinions suggest that filing an EEO charge and participating in a lawsuit are the only kinds of activities protected under the statute.  Assisting others in understanding their rights and advocating against discrimination through an employee organization are not protected activities according to this narrow view of the law.

The regulations of the EEOC reflect the broad mandate of the anti-discrimination policy of Title VII "to promote the full realization of equal

---

[3] The Defendant Appellee Library of Congress LOC has not met with the Plaintiff Appellant Cook Foundation at any time in or after 2008.

opportunity through a continuing affirmative program in each agency." 29 C.F.R. 1614.101(a). Protection against retaliation is not limited to "discrimination . . because he has opposed a practice." 42 U.S.C. 2000e-3(a). It also extends to "participating in any stage of administrative or judicial proceedings. . . " 29 CFR 1614.101(b). The regulations for federal agencies further make it clear that assisting others with discrimination complaints is not only protected, but is an activity that can be pursued on official time without taking leave. 29 CFR 1614.605(b). Finally, agencies are required to engage in broad dissemination of EEO policies and information about EEO rights of the kind that the Cook Foundation exists to facilitate. 29 C.F.R. 1614.102.

It was the broad mandate of the prohibition of all discrimination by federal agencies, as opposed to the prohibition of only enumerated kinds of discrimination that caused this Court to recognize a Title VII claim based on the revocation of defendant's official recognition of an employee group that preceded the Cook Foundation. *See*, *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1417-1418 (D.C. Cir. 1985). While that case did not involve facial retaliation of the kind involved here, it establishes the rule that

non-recognition of an LOC employee organization is a kind of discrimination that is prohibited under section 717 of Title VII.

### C.    Plaintiffs have Suffered Injury Within the Zone of Interest

The Court below erred in holding that the Cook Foundation, as an entity formed to support employees, is not within the zone of interest sought to be protected when Congress extended Title VII to federal employees. The Complaint clearly alleges that the Foundation is being denied the privileges of recognition because it engages in advocacy for employees who believe they have claims under Title VII. That denial is retaliatory conduct that harms the Cook Foundation and impairs its ability to carry out its mission.

To the extent that the Cook Foundation cannot assert harm to itself, the individual plaintiffs have been harmed because they are deprived of the added support that a stronger, officially recognized Cook Foundation could give to their claims. By punishing the Foundation for its support of the claims, defendant engages in retaliation that harms those employees whose claims are supported by the Foundation. The named individual

plaintiffs are members of the Cook Foundation and are named plaintiffs in

the putative class action known as *Mills v Billington,* Civil Action 04-cv-

2205 (D.D.C.), which has been pending since 2004.  The Cook Foundation

has played a key role in supporting that litigation from its inception when

the Foundation identified more than 600 individual LOC employees in the

EEOC administrative process who claimed to be victims of race

discrimination in promotions at LOC.  Indeed, Count II of the Complaint in

this action was aimed at obtaining the affirmative action reports mandated

by 42 U.S.C. 2000e-16(b) as a means of supporting the claims of race-based

barriers to promotion that are at the heart of both the *Mills* case  and the

affirmative action mandate of Section 717.

The support of the Cook Foundation for the promotion claims

asserted in *Mills* is directly relevant to the affirmative action obligations of

defendant,  including the annual analysis required by Section 717 of Title

VII (see, EEOC MD-717; 29 C.F.R. 1614)  that was not produced from 2004-

2011. 42 U.S.C. 2000e-16(b).  Participation in the affirmative action process

is precisely the role federal agencies are mandated to accord employee

groups under 42 U.S.C. 2000e-16(b)(3).

33

The advocacy role of the Cook Foundation is within the zone of interest that is protected by Title VII.  Defendant specifically refused to recognize the Cook Foundation because it and its members are actively engaged in supporting collective claims.  It was error to hold that employer practices designed to deter employee participation in the Cook Foundation were not practices designed to deter employees from exercising protected rights.  To the extent that the Cook Foundation cannot assert harm to itself, the individual plaintiffs have been harmed because they are deprived of the added support that a stronger, officially recognized Cook Foundation could give to their claims.

### III. Title VII Protects All Participation in EEO Proceedings

Even if this Court is not inclined to rule that the Cook Foundation can assert its own interest in attracting members who provide the resources to support the claims of employees, the individual plaintiffs who are members of the Cook Foundation suffered an actionable harm when defendant took action to weaken the Foundation so that it is less able to carry out its mission of supporting their claims in the *Mills* case and elsewhere.

The anti-retaliation protection of Title VII goes well beyond filing a

34

charge or a lawsuit. The Cook Foundation is being punished because it supports its members, officers and others in opposing practices made unlawful by Title VII. Such supporting activity is protected by Title VII and employer actions intended to deter such support are plainly within the zone of interest the statute is intended to protect. As the Court recognized in *Burlington*, supporting activities are protected. Activities enumerated by the statute include assisting or participating in any manner in an investigation, proceeding or hearing under Title VII. 42 U.S.C. 2000e-3(a); *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (U.S. 2006).

Section 717 does not contain an express prohibition on retaliation. Rather, the right of federal employees to sue for retaliation has been inferred from the broad prohibition on all forms of discrimination that appears in 42 U.S.C. 2000e-16(a). *See*, *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1417-1418 (D.C. Cir. 1985). *Cf. Gomez-Perez v.Potter*, 553 U.S. 474, 480 (2008) (inferring such protection from similar ADEA language). Extending the inference to make the cause of action for retaliation involving claims of federal employees at least as broad as that provided for private sector employees is a logical application of the principles of *Thompson*.

35

Indeed, as this Court recognized with regard to a predecessor to the Cook Foundation, the prohibition on all forms of discrimination that appears in section 717 is broader than the prohibition on enumerated forms of discrimination that applies to private sector claims. *See Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1417-1418 (D.C. Cir. 1985). *Cf. Gomez-Perez v.Potter,* 553 U.S. 474, 480 (2008).

The Court below erred in holding that the individual employees must allege that they are deterred in pursuing and supporting their own claims of discrimination by their personal loss of the privileges of official recognition (such as official time to attend an annual meeting and holding meetings on site). Rather, the actionable injury is to the capacity of the Cook Foundation to support their claims through advocacy and the increased resources that come with increased membership. By deterring most employees from joining the Foundation, the defendant weakens support for the claims of Foundation members. That injury is within the zone of interest of Title VII and should be sufficient to support the claim asserted here.

## Relief Sought

Plaintiffs seek reversal of the rulings on the motion to dismiss and an order remanding the action for proceedings on the merits of the retaliation claim.

**Respectfully submitted,**

*/s/ Joshua N. Rose*
David L. Rose
Joshua N. Rose
ROSE LEGAL ADVOCATES, P.C.
1726 M St., N.W., Suite 203
Washington, D. C. 20036
(202) 331-8555
Fax: (202) 331-0996
daver@roselawyers.com

Date: Jan. 7, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January 2013, the foregoing Brief was filed via Electronic Case Filing. A true and correct copy of the foregoing was served by e-mail and ECF, upon:

AUSA Jane M. Lyons
U.S. Attorney's Office for the District of Columbia
Civil Division
555 4th Street, N.W. - Room E4816
Washington, D.C.  20001
(202) 514-7161

jane.lyons@usdoj.gov

/s/Joshua N. Rose_____
Joshua N. Rose

38